# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5411 | **DATE** | 9/7/2000 |
| **CASE TITLE** | Harris vs. IL Vehicle Premium Finance Co. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. On the Court's own motion, its prior ruling in this case, on 7/26/00 is vacated and withdrawn. For the reasons set forth in the attached order, the motion to dismiss filed by IVPFC and Wolf and the motion to dismiss filed by IVIA are granted in part and denied in part. The motions are granted as to Count 5 with leave to amend that claim to attempt to cure the deficiencies noted in this opinion. The motions are denied as to Count 1 through 4. Additionally, the motions to dismiss filed by Illinois Founders and Interstate Bankers are are granted; Count 6 is dismissed for lack of subject matter jurisdiction. Harris' motion for class certification is granted in part and

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | SEP 1 2 2000 | | |
| | Notified counsel by telephone. | | | date docketed | | 47 |
| | Docketing to mail notices. | | | | | |
| | Mail AO 450 form. | | | WM | | |
| | Copy to judge/magistrate judge. | | | docketing deputy initials | | |
| OR | courtroom deputy's initials | | ED-7 FILED FOR DOCKETING 00 SEP 11 PM 4: 20 | 9/8/2000 date mailed notice | | |
| | | | Date/time received in central Clerk's Office | OR mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLIE E. HARRIS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 99 C 5411 |
| | ) | |
| ILLINOIS VEHICLE PREMIUM | ) | |
| FINANCE CO., ROGER WOLF, | ) | |
| ILLINOIS VEHICLE INSURANCE | ) | |
| AGENCY, INC., ILLINOIS FOUNDERS | ) | |
| INSURANCE COMPANY and | ) | |
| INTERSTATE BANKERS INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**

**SEP 1 2 2000**

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Willie Harris, Jr. has sued his car insurance broker, his insurers and the company that

financed his car insurance policies alleging violations of the Truth In Lending Act, the Illinois

Consumer Fraud Act and RICO, as well as claims for breach of fiduciary duty and declaratory

relief. The case is before the Court on defendants' motions to dismiss Harris' complaint. Also

before the Court is plaintiff's motion for class certification.

## FACTUAL BACKGROUND

On March 20, 1999, Willie Harris, Jr. contacted Illinois Vehicle Insurance Agency, Inc.

about obtaining insurance on his 1995 Chevy Blazer. IVIA sold Harris an auto liability policy

issued by Illinois Founders Insurance Company; an auto collision policy issued by Interstate

Bankers Insurance Company; a bail bond card; a motor club membership with Midwest Road

Service; a hospitalization policy issued by Nation Safe Drivers; and a travel protection plan

issued by American Bankers Insurance. IVIA also arranged for Harris to finance these policies: IVIA issued a retail installment contract for the bail bond, motor club membership, hospitalization policy and travel protection plan, and it arranged for the issuance of a premium finance loan by Illinois Vehicle Premium Finance Co. to cover the auto liability and auto property damage policies. Roger Wolf, who is the president, sole director, and registered agent of IVPFC and IVIA, signed both the retail installment contract and the premium finance contract; he signed the first as the "seller," and he signed the second as the "agent on behalf of buyer/insured." Harris subsequently incurred a loss, which he claims should have been covered under the policies issued by Illinois Founders Insurance Company and Interstate Bankers Casualty Company. When he made a claim under those policies, he was informed that his insurance had been canceled, though he had never received a notice of cancellation.

Harris filed a five-count complaint on behalf of himself and on behalf of others similarly situated. Count 1 is a class claim against IVIA, IVPFC and Wolf alleging violation of the Truth In Lending Act, 15 U.S.C. §1638, and Regulation Z, 12 C.F.R. §§226.17-226.18; Count 2 is a class claim against IVPFC alleging violation of TILA and Regulation Z; Count 3 is a class claim against IVIA, IVPFC and Wolf alleging violation of the Illinois Consumer Fraud Act; Count 4 is a class claim against IVIA, IVPFC and Wolf alleging breach of fiduciary duty; Count 5 is a class claim against Wolf alleging violation of the Racketeer Influenced and Corrupt Organizations Act; and Count 6 is an individual claim against Illinois Founders and Interstate Bankers for declaratory relief. IVIA, IVPFC and Wolf have moved, in two separate motions raising mostly the same arguments, to dismiss Counts 1 through 5 for failure to state a claim for which relief can be granted. Illinois Founders and Interstate Bankers have moved, in two separate motions

2

raising mostly the same arguments, to dismiss Count 6 for lack of subject matter jurisdiction and for failure to state a claim for which relief can be granted. The Court addresses both sets of motions below, as well as the plaintiff's motion for class certification.

## DISCUSSION

A.    The Motions to Dismiss

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. *Pelfresne v. Stephens*, 35 F.Supp. 2d 1064, 1069 (N.D. Ill. 1999) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). In ruling on a motion to dismiss, the Court construes the complaint's allegations in the light most favorable to the plaintiff, and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Bontkowski v. First National Bank of Cicero*, 998 F.2d 459, 461 (7th Cir.), *cert. denied*, 510 U.S. 1012 (1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). With these principles in mind, the Court considers Harris' claims.

1.    The TILA Claims

In Count 1, Harris alleges that IVIA, IVPFC and Wolf violated TILA and Regulation Z by splitting the financing of Harris' insurance products into two separate contracts. "Loan splitting"--a situation where the debtor wants, requests and expects to get a single loan consummated in a single transaction, but the lender instead documents and makes disclosures for the loan as if it were two separate transactions--violates TILA's mandate that the lender provide a single, comprehensible disclosure of the cost of credit. *See In re Buckles*, 189 B.R. 752, 760 (D.

3

Minn. 1995); *Vance v. National Benefit Association*, No. 99 C 2627, 1999 WL 731764, at *3 (N.D. Ill. Aug. 30, 1999). IVIA, IVPFC and Wolf ask the Court to dismiss this count under Rule 12(b)(6), arguing that TILA does not require the disclosures to be made in *a single document*; indeed, defendants argue, Illinois law would have forbidden them from incorporating the disclosures relating to the premium finance contract in the retail installment contract for the bail bond, motor club membership, hospitalization policy and travel protection plan.

At least one court in this district has held that TILA *does* require the disclosures to be made in a single document. *See Clay v. Johnson*, 22 F.Supp. 2d 832, 840 (N.D. Ill. 1998) (12 C.F.R. §226.17 requires TILA disclosures to be provided, at a minimum, in a single document; providing disclosures in separate documents does not meet the "grouped together" and "segregated" requirements of both TILA and the Regulations) (citing *Shepeard v. Quality Siding & Window Factory*, 730 F.Supp. 1295, 1300-01 (D. Del. 1990)). Of course, this assumes that the debtor asked for and expected a single transaction, whether in connection with the issuance of all his insurance products, or in connection with the issuance of insurance products and the financing of those products. Illinois law and precedent from this Circuit suggest that the latter situation involves two separate transactions. *See* 215 ILCS 5/513a9; *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037, 1045 (7th Cir. 1998) ("The [premium] financing agreement is a contractual arrangement separate from the insurance policy itself . . . . The financing activity is ancillary to the insurance relationship."). But the question of whether this case involved one transaction or two transactions is factual in nature; the Court must consider the circumstances surrounding the transaction(s), which are not discernible from the pleadings on file. *See Buckles*, 189 B.R. at 761. Thus, the issue of how many transactions this case involved

4

--and the related issue of what TILA would have required for the particular transaction or transactions--cannot be resolved at this time on defendants' motion to dismiss. *See Vance,* 1999 WL 731764, at *3. The motion to dismiss Count 1 is denied.

In Count 2, Harris alleges that IVPFC violated TILA and Regulation Z by using a premium finance contract that fails to disclose the amount financed and the total of payments or total cash price; contains no descriptive explanations; states an annual percentage rate that does not appear to have been calculated in the manner required; and fails to make the finance charge and annual percentage rate more conspicuous than any other items. Defendants argue that Count 2 should be dismissed under Rule 12(b)(6) because the premium finance contract complied with Illinois law and therefore cannot have violated TILA. As Harris correctly points out, the Seventh Circuit has held otherwise; *Autry* holds that the Court may apply TILA to premium finance contracts. 144 F.3d at 1045 (the Illinois statute relating to premium finance contracts falls outside the McCarran-Ferguson Act's protective umbrella and therefore does not preempt federal law, so the court *may* apply TILA). That does not necessarily mean that the premium finance contract issued in this case is necessarily governed by TILA or that it necessarily violated TILA, but it is enough to get Harris past a motion to dismiss.

2.    The ICFA Claim

In Count 3, Harris alleges that IVIA, IVPFC and Wolf violated the Illinois Consumer Fraud Act by having Wolf act as Harris' agent and having Wolf arrange financing with IVPFC without disclosing that Wolf owned and controlled both companies; he alleges that he and the other class members were "overcharged" as a result of Wolf's self-dealing. Complaint, ¶51. Defendants argue that this claim should be dismissed for a number of reasons. First, they argue

5

that, as a matter of law, the failure to disclose the inter-relationship between Wolf, IVIA and IVPFC was not a deceptive practice because the inter-relationship between these defendants was not material and therefore need not have been disclosed. The Court disagrees. The fact that Wolf controlled both companies is what potentially gave rise to the self dealing allegations, and self-dealing is definitely a material fact; an agent cannot engage in any self-dealing unless the facts are disclosed to the principal. *See Martin v. Heinold Commodities, Inc.*, 117 Ill. 2d 67, 71, 86, 510 N.E.2d 840, 842, 848-49 (1987). *See also Balderos v. City Chevrolet*, 214 F.3d 849, 853 (7th Cir. 2000) (citations omitted) (undisclosed self-dealing by an agent is a serious violation of a fiduciary duty).

Defendants next argue that Count 3 should be dismissed because the Illinois Code of Civil Procedure exempts insurance companies from fiduciary liability and, without a fiduciary relationship, defendants had no duty to disclose their relationship to Harris. We address this argument in greater detail in connection with Count 4, the breach of fiduciary duty claim. Here, it is enough to note that the Court cannot say, as a matter of law, that these defendants did not owe Harris a fiduciary duty.

Defendants also allege that none of this is of any consequence because the defendants' relationship was disclosed to Harris--through the companies' names (both start with "Illinois Vehicle") and the fact that Wolf signed both contracts. These facts may or may not have been enough to clue Harris in to the relationship between the defendants. But Harris alleges in his complaint that the relationship was not disclosed, and for purposes of resolving this motion, we must accept that as true. *See Bontkowski*, 998 F.2d at 461.

Finally on this score, defendants argue that Count 3 fails to state a claim because Harris

has not alleged how the nondisclosure proximately caused him to suffer any injury. That is simply false; Harris alleges that as a result of the failure to disclose the relationship, he and the other class members were "damaged, in that they were overcharged, and in that their agents obtained undisclosed compensation in the transaction." Complaint, ¶51. For these reasons, defendants' motion to dismiss Count 3 is denied.

3. The Breach of Fiduciary Duty Claim

In Count 4, Harris alleges that IVIA and Wolf, as Harris' agents, had a fiduciary obligation to disclose all material facts to Harris and to refrain from self-dealing, and that they breached that duty by failing to disclose that Wolf owned and controlled both IVIA and IVPFC. He also alleges that IVPFC and Wolf induced IVIA to violate its fiduciary duty as Harris' agent. Defendants argue that this claim must be dismissed under Rule 12(b)(6) because §2-2201 of the Illinois Code of Civil Procedure exempts defendants from liability for breach of fiduciary duty. The Court disagrees. Section 2-2201 provides that "[n]o cause of action brought by any person or entity against any insurance producer, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance shall subject the insurance producer, registered firm, or limited insurance representative to civil liability under standards governing the conduct of a fiduciary or a fiduciary relationship . . . ." 735 ILCS 5/2-2201. There is an exception noted, though it is not relevant for purposes of this case.

Harris alleges that Wolf and IVIA were insurance brokers that acted as his agent in procuring auto insurance. *See* Complaint, ¶¶1c, 54. Thus, it is not at all clear that Wolf and IVIA fall into the category of "insurance producer, registered firm, or limited insurance

7

representative," and the defendants have done nothing to assist the Court in determining whether this is so. Illinois courts have consistently held, even after the enactment of §2-2201, that the relationship between an insured and his broker, acting as the insured's agent (as Harris alleges), is a fiduciary one, and that the broker may be liable for breach of the resulting fiduciary duty. *Conagra, Inc. v. Arkwright Mutual Insurance Co.*, 64 F.Supp. 2d 754, 772 (N.D. Ill. 1999). *See also Cincinnati Insurance Co. v. Guccione*, 308 Ill. App. 3d 220, 225, 719 N.E.2d 787, 791 (1999) ("the relationship between an insured and his broker is fiduciary"). Nor would §2-2201 bar Harris' claim against IVPFC; the conduct alleged against IVPFC deals with the financing of insurance premiums, which the Seventh Circuit has held to be a separate transaction from the sale, placement or procurement of insurance products, which is what §2-2201 covers. *See Autry*, 144 F.3d at 1045. Defendants' motion to dismiss Count 4 is denied.

4.    <u>The RICO Claim</u>

In Count 5, Harris alleges that Wolf

> devised, approved and implemented a scheme or artifice to:
>     a. Act as broker, and have IVIA act as broker, on behalf of the insured without disclosing his relationship with IVPFC.
>     b. Act as a broker on behalf of the insured and misrepresented his relationship with IVPFC. Complaint, ¶62.

He further alleges that Wolf's scheme constituted mail fraud and wire fraud because IVPFC mailed quotes, applications for insurance and insurance policies to consumers, mailed money to insurance companies, used the mails to obtain premium payments and finance charges, and used interstate wire transmissions to pull credit reports. *Id.* ¶¶63-64. He alleges that he and the other class members were injured in their property as a result of the scheme. *Id.* ¶69. Finally, he alleges that the scheme "victimized thousands of consumers, extended over a period of years,

8

continued to the present, and will continue into the future unless halted by the court. . . ." *Id.*
¶66.

To state a claim for violation of 18 U.S.C. §1962(c), which appears to be what Harris is
attempting to do, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4)
of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985), *quoted in
Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). A "pattern
of racketeering activity" consists of at least two predicate acts of racketeering activity committed
within a ten-year period. *See* 18 U.S.C. §1961(5). The predicate acts are violations of a
specified list of criminal laws, including violations of 18 U.S.C. §1341 (mail fraud) and §1343
(wire fraud). *Id.* §1961(1)(B). Predicate acts of fraud must be pled with particularity, *see* Fed.
R. Civ. P. 9(b), that is, "a RICO plaintiff 'must, at a minimum, describe the predicate acts [of
fraud] with some specificity and state the time, place, and content of the alleged communications
perpetrating the fraud." *Goren v. New Vision International Inc.*, 156 F.3d 721, 726 (7th Cir.
1998) (quoting *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)). A plaintiff
must also show "that the racketeering predicates are related, and that they amount to or pose a
threat of continuing criminal activity." *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S.
229, 239 (1989).

Defendants argue that this claim must be dismissed because: (1) Harris failed to plead his
allegations with the specificity required by Rule 9(b); (2) the conduct about which Harris
complains is simply not fraudulent; and (3) Harris failed to allege that he relied on the alleged
fraud or that the alleged fraudulent conduct proximately caused his injuries. We quickly dispose
of the last two arguments. First, the conduct about which Harris complains may very well be

9

fraudulent; better stated, at this stage of the game, the Court cannot say that there is no set of facts that could support a RICO claim based on mail or wire fraud. Harris' mail fraud claim is predicated not on an affirmative misrepresentation, but on Wolf's failure to disclose his relationship with IVIA and IVPFC. And although there are cases holding that a mere failure to disclose, absent something more, is not fraud, *see, e.g., Reynolds v. East Dyer Development Co.*, 882 F.2d 1249, 1252 (7th Cir. 1989), the Seventh Circuit has held that "[w]hether a failure to disclose is fraudulent depends on context." *Emery v. American General Finance, Inc.*, 71 F.3d 1343, 1347 (7th Cir. 1995). If, as Harris has alleged, defendants had a fiduciary relationship with Harris and failed to disclose a material fact, they may be guilty of fraud. And if, as Harris has alleged, they used the mail to further that fraud, they may be guilty of mail fraud. *See Claire's Stores, Inc. v. Abrams*, No. 86 C 9851, 1989 WL 134959, at *3 (N.D. Ill. 1989) (the nondisclosure of information by a fiduciary or party who otherwise has an affirmative duty to disclose such information can constitute mail or wire fraud) (citing *United States v. Ventura*, 724 F.2d 305 (7th Cir. 1983)). The same may be true even if defendants are able to show that they had no fiduciary relationship with Harris. *See Emery*, 71 F.3d at 1348. ("it is not true that if you are not a fiduciary anything goes, short of false statements"; "[a] half truth, or what is usually the same thing a misleading omission, is actionable as fraud, including mail fraud, if the mails are used to further it, if it is intended to induce a false belief and resulting action to the advantage of the misleader and the disadvantaged of the misled.").

Second, contrary to defendants' assertion, Harris *has* alleged that the fraudulent conduct proximately caused his injuries; he alleges that as a result of Wolf's scheme to defraud, he and thousands of others were injured in their property, complaint, ¶69, and for purposes of resolving

10

this motion, we accept this allegation as true. *See Bontkowski*, 998 F.2d at 461.

Nevertheless, the Court agrees that Harris has failed to plead his RICO claim with the specificity required by Rule 9(b). As we have already noted, to win on his RICO claim, Harris would have to prove a "pattern of racketeering" consisting of at least two separate criminal acts. *See* 18 U.S.C. §1961(5); *Sedima, S.P.R.L.*, 473 U.S. at 496. Where, as here, the acts alleged are acts of fraud, Rule 9(b) requires that the circumstances of each act must be pled with particularity. A RICO plaintiff "must, at a minimum, describe the predicate acts [of fraud] with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Goren*, 156 F.3d at 726. Harris has not done this. He alleges that Wolf acted as his broker without disclosing his relationship with IVPFC, but he does not say when this happened. He alleges that IVPFC used the mail and interstate wire transmissions in identifying potential insureds, in distributing the documents necessary to close the deals and in getting money from those insureds, but he does not say when IVPFC identified him as a potential victim of the scheme, when IVPFC pulled his credit report, when IVPFC mailed insurance documents to him, or when IVPFC received from him premium payments through the mail.

Additionally, even if the Court were to hold that Harris had adequately pled the fraud against *him*, he certainly has not done so with respect to other insureds. On that score he alleges only that Wolf's "scheme victimized thousands of consumers," *id.* ¶66. Harris offers no explanation for how he arrived at the conclusion that Wolf's scheme operated on such a broad basis; nor does he offer any details regarding transactions involving other insureds. Such details are necessary to identify a violation of RICO. *See Emery*, 71 F.3d at 1348; *Goren*, 156 F.3d at 729 (conclusory allegations that a defendant also defrauded unidentified others are not enough to

establish a pattern of fraud). Nor has Harris alleged that the information he needs to be able to satisfy Rule 9(b) rests exclusively within the defendants' control or is otherwise unavailable to him, which in some instances might excuse compliance with the rule's heightened pleading standard. *See Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998); *Goren*, 156 F.3d at 729 n.6. Because Harris failed to satisfy Rule 9(b)'s pleading standard, the Court will grant the motion to dismiss Count 5; the dismissal is without prejudice, however, and Harris may amend his claim to cure the deficiencies noted.

5.      The Declaratory Judgment Claim Against Illinois Founders and Interstate Bankers

Harris brings Count 6 on behalf of himself only, asking for a declaratory judgment that the policies issued to him by Illinois Founders and Interstate Bankers were canceled in violation of section 143.15 of the Illinois Insurance Code. Illinois Founders and Interstate Bankers have moved to dismiss Count 6, the only claim against them, on a number of grounds, the most convincing of which is that the Court lacks subject matter jurisdiction of this claim.

28 U.S.C. §1367(a) gives district courts supplemental jurisdiction over "all claims that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case of controversy under Article III of the United States Constitution." Under this statute, "judicial power to hear both state and federal claims exists where . . . the state and federal claims derive from a common nucleus of operative facts." *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *Myers v. County of Lake*, 30 F.3d 847, 850 (7th Cir. 1994)). "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and

12

comity.'" *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997)

(quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)). All of these

considerations counsel in favor or dismissal in this case. Count 6 is based on an entirely

different set of operative facts than the rest of the counts. In Count 6 Harris alleges only that

Founders and Interstate canceled his insurance policies without notice as required by 215 ILCS

5/143.15, complaint, ¶71; he does not contend that that cancellation had anything to do with the

nondisclosures and self-dealing alleged in the claims against Wolf, IVIA and IVPFC. Count 6

rests solely on state law grounds, and it involves parties not at all implicated in the misconduct

alleged in Counts 1 through 5; additionally, unlike Counts 1 through 5, Count 6 is asserted not on

behalf of the classes defined in the complaint, but on behalf of Harris alone. Although it is true

that "[a] loose factual connection between the claims" is generally sufficient to create

supplemental jurisdiction," *see Ammerman*, 54 F.3d at 424, the Court finds that Count 6 is not

sufficiently connected to the rest of the counts to warrant exercising supplemental jurisdiction.

The motion to dismiss Count 6 is granted.

B.    Plaintiff's Motion for Class Certification

Harris, the named plaintiff, seeks certification of three classes: he seeks to certify class A

for purposes of Count 1; he seeks to certify class B for purposes of Count 2; and he seeks to

certify class C for purposes of Counts 3 and 4.[1]  Class A consists of "all persons with respect to

whom IVIA and/or IVPFC sold insurance on credit and issue two or more TILA disclosures, on

or after a date one year prior to the filing of this action." Complaint, ¶34(a). Class B consists of

---

[1]Harris does not say which class is seeking to assert Count 5, the RICO claim. But because the
Court has dismissed the RICO claim, it need not address the class certification issue as to this claim.

"all persons who received TILA disclosures in the form represented by Exhibit E, on or after one year prior to the filing of this action." *Id.* ¶34(b). Class C consists of "all persons who satisfy the following criteria: (1) They gave a power of attorney to IVIA; (2) They entered into a transaction with IVPFC; (3) There is no document which clearly discloses that IVIA and IVPFC are both owned by Roger G. Wolf, and that IVIA is not acting on behalf of the insured; and (4) The transaction occurred on or after a date three years (Count III) or four years (Count V) or five years (Count IV) prior to the filing of this action." *Id.* ¶34(c).

To obtain class certification, Harris must prove that the action satisfies the four prerequisites of Rule 23(a). Defendants do not dispute that Harris has satisfied these requirements, and for the reasons quickly explained here, the Court finds that they are met. Rule 23(a)(1) requires Harris to show that the class is "so numerous that joinder of all members is impracticable." Harris alleges that this is the case, based on the fact that defendants are businesses of substantial size that use printed form documents to engage in the practices complained of," Memorandum in Support of Motion for Class Certification, p. 5, and defendants do not dispute that the proposed classes are sufficiently numerous to make joinder impracticable. Rule 23(a)(2) requires Harris to show that there are "questions of law or fact common to the class." Harris need only demonstrate a single common question and that is easily done here; there are several common questions of law and fact underlying the proposed class members' retail installment contracts and premium finance contracts. Rule 23(a)(3) requires Harris to show that his claims are typical of the claims of the class; this requirement too is satisfied because Harris' claims arise from the same course of alleged conduct and are based on the same legal theories as the proposed classes' claims. Finally, Rule 23(a)(4) requires Harris to show that he

14

will fairly and adequately protect the interests of the class. He has done so; his attorneys are qualified, experienced and quite capable of conducting the proposed litigation, and Harris' interests are not antagonistic to those of the class.

In addition to satisfying the requirements of Rule 23(a), Harris must satisfy one of the sections of Rule 23(b). *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993). Harris seeks certification of all three classes under Rule 23(b)(3), which means he must show that questions of law or fact common to all class members predominate over individual issues and that the class action mechanism is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Defendants argue that Harris is unable to satisfy the first half of this equation. The Court considers this argument with respect to each proposed class in the context of the particular claims each seeks to assert.

Harris seeks to certify two classes with respect to the TILA claims. Class A, on whose behalf Harris seeks to assert Count 1 of the complaint, would claim that defendants engaged in "loan splitting" and that the two documents issued by defendants failed to satisfy the requirements of TILA. Harris and the putative class members seek both statutory and actual damages in connection with this claim, and the Court agrees with defendants that some degree of individualized assessment will be necessary in determining the amount of actual damages appropriate for each class plaintiff. *See Balderos v. Illinois Vehicle Premium Finance Co.*, No. 96 C 8050, 1997 WL 627650, at *6 (N.D. Ill. Oct. 2, 1997) ("to prove actual damages in a TILA case, each class member would have to prove that but for the violation, he would have obtained credit on more favorable terms elsewhere."). But, as this Court recently held in another TILA case, if that were the only issue requiring individual attention, the Court would not deny class

15

certification. *See Williams v. Rizza Chevrolet-Geo, Inc.*, No. 99 C 2294, 2000 WL 263731, at *3

(N.D. Ill. March 6, 2000) (possibility of individualized damage inquiries does not defeat class

certification even if individual hearings ultimately may be required) (citing *Heastie v.*

*Community Bank of Greater Peoria*, 125 F.R.D. 669, 675 (N.D. Ill. 1989)). Unfortunately for

the class A plaintiffs, that is not the only individualized inquiry that would need to be made with

respect to Count 1. This claim, at least in part, is likely to require the Court to delve into the

particular circumstances of each transaction to determine whether defendants engaged in "loan

splitting," *see* discussion *supra* at 5, and Harris has not explained how these issues can be

determined on a class basis. Based on the parties' submissions, the Court believes that this

threshold issue is likely to predominate over the common issues of whether the combined

documents in each transaction actually satisfy TILA's disclosure requirements and what amount

of statutory damages is appropriate. Accordingly, the Court declines to certify class A.

Class B, on the other hand, is a different story. Class B, on whose behalf Harris seeks to

assert Count 2 of the complaint, seeks to allege that the premium finance contract issued by

IVPFC, through Wolf, did not comply with TILA and Regulation Z. Unlike the claim asserted

in Count 1, this claim does not require the Court to look to the particular facts of each plaintiff's

situation to assess liability; it alleges strictly a violation of TILA's disclosure requirements and

therefore the individual class members' perceptions of the transactions and the documents are

irrelevant to assessing liability. *See Clay*, 22 F.Supp. 2d at 836 (TILA imposes a sort of strict

liability in favor of consumers who have secured financing through transactions not in

compliance with the terms of the Act) (citing *Rowland v. Magna Millikin Bank*, 812 F.Supp. 875,

878 (C.D. Ill. 1992); *Shepeard v. Quality Siding & Window Factory*, 730 F.Supp. 1295, 1299 (D.

16

Del. 1990)). This leaves only the individualized assessment of actual damages, which this Court does not believe will predominate over the common issues involved in this claim. *See Williams*, 2000 WL 263731, at *3 (March 6, 2000); *Abt v. Mazda American Credit*, No. 98 C 2931, 1999 WL 350738, at *2 (N.D. Ill. May 19, 1999). The Court can revisit the issue if it later becomes apparent that the individual damages inquiries will be more consuming that presently seems to be the case. The motion to certify class B is granted.

Harris also seeks to certify class C for purposes of pursuing claims for violation of the Illinois Consumer Fraud Act and breach of fiduciary duty. Liability under the ICFA requires proof of (1) a deceptive act or practice by defendants; (2) in the course of conduct involving trade or commerce; (3) made with the intent that the plaintiff rely on the deception; (4) that proximately caused an injury to the plaintiff. *Williams*, 2000 WL 263731, at * 3 (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 675 N.E.2d 584, 593 (1996)). The fact that plaintiffs are required to prove intent in connection with this claim raises a significant possibility that some inquiry regarding what was said to each individual insured/debtor will be necessary. As this Court said in *Williams*, the need to deal with this issue on an individual basis may well overwhelm any common issues, absent a showing that the defendants had a standardized way of discussing the premium financing issues. 2000 WL 263731, at *3. Although Harris has alleged that defendants likely had standardized forms for transactions, he has not alleged that defendants had a standardized way of discussing the transactions; in short, he has not shown that the individualized inquiry will be unnecessary or that it will be a quick and easy issue with which to dispense. The motion to certify class C is therefore denied.

Defendants also argue that the Court should decline to certify class C because Harris

17

defined it too broadly. Because the Court has denied the motion to certify with respect to class C, the Court need not reach this argument.

## CONCLUSION

On the Court's own motion, its prior ruling in this case, *Harris v. Illinois Vehicle Premium Finance Co.*, No. 99 C 5411, 2000 WL 1029232 (July 26, 2000), is vacated and withdrawn. For the reasons explained above, the motion to dismiss filed by IVPFC and Wolf and the motion to dismiss filed by IVIA are granted in part and denied in part. The motions are granted as to Count 5 with leave to amend that claim to attempt to cure the deficiencies noted in this opinion. The motions are denied as to Counts 1 through 4. Additionally, the motions to dismiss filed by Illinois Founders and Interstate Bankers are granted; Count 6 is dismissed for lack of subject matter jurisdiction. Harris' motion for class certification is also granted in part and denied in part; the motion is granted as to class B but denied as to class A and class C.

Dated: September 7, 2000

MATTHEW F. KENNELLY
United States District Judge